## PROSECUTION FOR BURNING UNFINISHED BUILDING.

Circuit Court of Williams County.

### ELI VAN IMMONS v. STATE OF OHIO.*

Decided, 1905.

*Arson—Indictment Not Rendered Bad for Duplicity—By Self Evident Mistake in Date—Acquittal of Burning Unfinished Dwelling—Not a Bar to Prosecution for Burning Building Other than a Dwelling—Criminal Law—Sections 6831 and 7215.*

1. An indictment, the first count of which charges the accused as principal with burning a building in 1804, and the second with aiding and abetting another in the same crime in 1894, s not bad for duplicity and indefiniteness, inasmuch as the date in the first count was clearly a mistake; and no substantial right of accused being prejudiced, under Revised Statutes 7215, a motion to quash was properly overruled.

2. To constitute the crime of arson under Revised Statutes 6831, it is not necessary that the building burned be entirely completed. It is sufficient if it be a structure in the course of erection and intended for a dwelling, and although unfit for the purposes for which it is ultimately intended is so far completed that it could be used temporarily for shelter or occupation or for the storage of personal property.

3. Acquittal of the charge of burning a dwelling-house is not a bar to a subsequent prosecution for the same offense, under an indictment charging the burning of a structure other than a dwelling-house.

*C. L. Newcomer,* for plaintiff in error.
*Edward Gaudern,* contra.

HULL, J.; HAYNES, J., and PARKER, J., concur.

The defendant in this case was indicted by the grand jury of this county for the crime of arson. It is charged that he burned a certain building, the property of Martha Page, of the value of $50 or more, and he was convicted, judgment was entered upon the verdict and he was sentenced to imprisonment in the penitentiary. A motion for a new trial was overruled by the court and a petition in error filed in this court to reverse the judgment.

*Affirmed by the Supreme Court, without report, 72 O. S., 678.

There are numerous errors complained of:

First, it is claimed that the court erred in overruling the motion to quash this indictment.

The offense was set up in different forms in two counts in the indictment.

The first count charged that the defendant then and there unlawfully, maliciously and willfully did attempt to burn a certain building, to-wit, a certain building then and there being, and then and there in the course of construction, then and there not completed, then and there designed to be used thereafter as a dwelling-house, then and there unoccupied, then and there being of the value of $50, and more, etc., charging the time of the commission of this offense as set forth in the first count of the indictment as in the year 1804.

In the second count it is charged that the defendant willfully and maliciously did attempt to burn, and then and there unlawfully, willfully and maliciously did burn a certain building; to-wit, a certain building then and there being in the course of construction, then and there not completed, and then and there designed thereafter to be used as a dwelling-house, then and there unoccupied, then and there being the property of one Martha Page, of the value of $50 or more. And the grand jurors aforesaid, upon their oaths aforesaid, do further find and present that one Eli Van Immons before said arson was committed as aforesaid by the said Homer Morrison, the said arson being the same unlawful, willful and malicious burning mentioned in the first count of this indictment and before said unlawful, willful and malicious burning was committed as aforesaid by the said Homer Morrison aforesaid; to-wit, on October 8, A. D. 1894, at the county and state aforesaid unlawfully, willfully and maliciously did, aid, abet, procure, counsel and incite him, the said Homer Morrison, to said arson in manner and form aforesaid to do and commit.    This count charged the defendant with aiding and abetting Homer Morrison in the commission of the crime of arson and the offense in this count is referred to as the same offense set forth in the first count in the indictment, but the date mentioned here is October 8, 1894, while the date in this first count is mentioned as the eighth day of October, 1804.    It is claimed that this shows

that two offenses are contained in this indictment and further that it makes the indictment bad for duplicity and indefiniteness, inasmuch as these two dates are used—in the one count 1804 and the other 1894.  The first count in the indictment, which made the crime in 1804, was quashed by the court and the defendant was tried upon the second count.  We are of the opinion that the court did not err in overruling the motion to quash the second count of the indictment upon the motion of the defendant. It is clear upon the face of the indictment on record that the date in the first count of the indictment, 1804, was a mistake. The defendant himself, according to the record, was about thirty years of age at the time of the trial and it is very evident that there was no intention of charging him with committing a crime fifty years or more before he was born.  It is clear that this date in the first count of the indictment charging him with the commission of this offense as principal was a mistake and under the statute in this state was not to be regarded as prejudicial to the defendant.  Revised Statutes, 7215, besides providing a large number of things which shall not be regarded, uses these words:

"No indictment shall be deemed invalid  *   *   *   for any *   *   *   defect which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

Although the second count refers to the first, still it is charged clearly in the second count as October 8, 1894, and there can be no doubt that the defendant understood that that was the date upon which the crime was laid that he was to answer for, and clearly he could not have been misled in preparing his defense. After this motion was overruled, the defendant demurred to the indictment and this demurrer was overruled by the court of common pleas and this, it is claimed, was error.

It is claimed by plaintiff in error that the indictment does not charge any offense, under the law of this state, against the defendant, and by defendant I mean the defendant below, in that it does not charge the defendant with burning a completed and finished building, but does charge that he burned a certain building; to-wit, a certain building, then and there being in the course of construction, and then and there designed to be thereafter used

as a dwelling-house, then and there not completed, then and there being the property of one Martha Page, of the value of $50 and more.

It is said that under the statute of this state, to constitute arson, the building destroyed must be a completed and finished building; that this indictment showing upon its face that the building was not completed or finished, did not constitute a violation and did not contain sufficient allegations to constitute a violation of the arson statute against the defendant. It is very clear to us, however, that the indictment was sufficient upon demurrer, at least. It does not state what the building lacked; it does not state wherein it was unfinished. It states that it was a building then and there intended thereafter to be used as a dwelling-house, then unoccupied, unfinished and incompleted. For aught that appears upon the face of the indictment, it might simply have lacked one window, or the glass in one window or more, or the steps, or the paint, or one chimney, or many and many other things that might be mentioned. It is, of course, clear, if the building only lacked one of these small things to make it absolutely complete, that it would still be called a building, and properly so, in an indictment.

After the evidence for the state was in, and during the entire trial, the defendant claimed that the structure, as shown upon the trial of the case, was not a building within the meaning of the statute, and a motion was made to bring a verdict in favor of the defendant, and, in connection with the ruling upon the demurrer, that may as well also be discussed.

As I say the defendant claimed that the evidence did not show that the building destroyed was a building within the meaning of the statute. The arson statute, Revised Statutes, 6831, provides that whoever shall maliciously burn or attempt to burn any dwelling-house, kitchen—and then follows a large number of other buildings—etc., of the value of $50 or more, shall be imprisoned in the penitentiary, etc., and the question is whether the structure shown in this case comes within the definition of "any other building." It is claimed by plaintiff in error that this means a completed building. There is no provision in the statute for an unfinished building, and until it is

complete, ready for occupancy, or substantially so, it can not be regarded as a building; that up to that time it is claimed that whatever of material there is in the structure can only be regarded as personal property, or as property which will come within the statute against the malicious destruction of property, which is another and distinct statute.

The evidence in the case shows that the structure was owned by Martha Page; that she was constructing a dwelling-house; that it had proceeded so far that the foundation was laid, the house was inclosed. It was constructed of building block as it was called. The house was inclosed; the roof was on; it was lathed; the floors were laid; the steps leading up to the house had not been constructed; the stairway on the inside of the house had been partially constructed; the doors were not in; the windows were not in; the house had not been plastered, the chimneys had been built and the furnace set up, and the door frames and window frames put in. This was the condition of the structure at the time it was burned, for there is no question made in the record but that the house was burned by someone.

Many authorities are cited for plaintiff in error to sustain his contention that the building or structure in this condition could not be regarded as a building. I shall not undertake to review any of the authorities that were cited. In some states it appears there are statutes providing for the burning of unfinished buildings—separate statutes, distinct from statutes making it a crime to burn a finished building. We have no such statute or statutes in this state and this indictment must stand, if it stands at all, upon Revised Statutes, Section 6831, from which I have read, and if this structure comes within any part of the statute, it comes within the words "other buildings." As I have said in speaking of the demurrer, if the house only lacks some small and insignificant thing from absolute completion, it would seem to be clear that it would still be called a building, and we would not say that a structure intended for a house was not a building because it lacked one chimney, or a part of the doors, or a part of the windows, as I have suggested. The question is, if there can be any question: When does a structure, if at all, cease to be mere building material, and become under the law a build-

ing? Counsel for plaintiff in error claims that this does not occur at any time until the building has been substantially completed. Some of the cases cited seem to sustain this contention.

Arson, at common law, included only the burning of a dwelling-house, but to this has been added, from time to time, the other classes of buildings and structures until now, in our state, it is plain that the statute is intended to cover every kind of a building, and after describing a great number of buildings it adds these general words "any other building." The question is one not entirely free from difficulty and there are no decisions in this state directly in point, but it seems to us that when a building is in the condition that this building was in, and when it has assumed the character and proportions that this building had assumed at the time of the fire, that it may be, and should be, within the purview of this statute, called a building. It is true, as urged by counsel for plaintiff in error, that the mere pile of material lying upon the ground does not constitute a building and so not within any statute, but where a structure has been erected, designed and intended for a dwelling-house, and has reached the stage that this one had with its foundation, with its inclosure, its side walls all up and the roof upon it, the lathing upon the inside, the stairway up, although it still lacks the doors and windows, the plastering and the outside steps, it seems to us that structure, within the meaning of the statute, is a building.

It may be added further that the partitions had all been constructed in this house, and lathed, and the rooms inclosed, and it was in such condition as to offer shelter there for human beings, for beasts, for animals or for property. It was not a dwelling-house, as it had never been occupied by a human being, but, in common language, it would seem to us as though any one speaking of such a structure wou'd speak of it as a building; that it could not well be described in any other way. It was not entirely finished, it was not completed, but the object of the arson statute is to protect buildings, if they may be properly called buildings, from being destroyed by fire. The burning of a building which has once been occupied by human beings, has always been regarded as a crime of a very strong character. The burning of a dwelling-house in former times in England was a

capital offense, and to burn any kind of a building has always been regarded as a crime of a very serious nature and punished by very heavy penalties, and we think that this statute should be so construed as to protect a structure of this kind, and we are of the opinion that this structure had reached that stage where it could be called a building.

There is a case cited by defendant in error for the state, which sustains us in this view, and is clearly, it seems to us, in point with this case. In *Clark* v. *State*, 69 Wis., 203, the court say in the first paragraph of the syllabus:

"A structure in course of erection, and intended for a dwelling, which, though unfit for the purpose for which it is ultimately designed, and not occupied as a dwelling, is yet so far completed as to be used temporarily for the shelter or occupation of man or beast, or for the storage of tools or other personal property for safekeeping, is a 'building,' within the meaning of Section 4409, Revised Statutes, and the felonious breaking and entering the same in the night time is burglary."

In this case the building intended for a dwelling-house was in the course of construction and a room in it had been partitioned off and designed for the purpose of storing tools in that room, and it was held by the Supreme Court that this constituted burglary. The court say, on page 205:

"It appears that the building broken into in this case was erected upon a stone foundation, was intended for a dwelling-house, and was in the process of construction. The walls or sides were up, and the roof was on. The windows and doors had not been put in, though some of the windows were boarded up. A temporary room had been partitioned off in the basement; the basement walls forming two sides, the other sides being closed up with boards, with a door which was locked with a padlock. This room was intended for storing the tools of the workmen while at work on the building. The outside window of the basement was covered with boards. A temporary floor had been laid, from which the basement was reached by means of a ladder. There was a chest of tools on this temporary floor."

And further on, on page 206 the court say:

"Now, the contention of the learned counsel for the plaintiff in error is, that breaking and entering a structure in the pro-

cess of construction, as the building in question was described to be, is not included within the statute. It will be observed the provision quoted makes the breaking and entry in the night time of 'any office, shop, warehouse, or other building not adjoining or occupied with any dwelling-house,' with intent, etc., one grade of burglary. But it is said a structure which is unfinished, unfit for occupation for the purpose for which it was designed, is not a building, within the meaning of the statute. But, on considering the objects of the statute, we are fully satisfied that the word 'building,' as used therein, does not necessarily mean a structure so far completed as to be in all respects fit for the purpose for which it was intended. It doubtless does mean an edifice or structure erected upon land, and so far completed that it may be used temporarily or permanently for the occupation or shelter of man or beast, or for the storage of tools or other personal property for safekeeping. Webster defines the word 'building' as 'a fabric or edifice constructed; a thing built.' Worcester defines it, 'a structure or edifice'; the Imperial Dictionary, 'a fabric or edifice constructed for use or convenience, as a house, church, shop.' In *La Crosse & M. Ry.* v. *Vanderpool,* 11 Wis., 121, Mr. Justice Paine says: 'The well understood meaning of the word is a structure which has a capacity to contain, and is designed for the habitation of man or animals, or the sheltering of property.' In this case the structure was intended for use and occupation as a residence when completed. Now, to hold that it was not a building does not satisfy the definition of the statute, because it is unfinished, not perfect for the purpose for which it was designed eventually to be used, would be giving the statute a stricter construction than we were disposed to place upon it. We are rather inclined to hold that the Legislature intended to include in the term 'building' a dwelling-house not completed, but in the condition in which the one in question was, and in which tools and other articles of personal property were or might be temporarily stored or left for safekeeping. The language is broad enough to include such an edifice, and we think does include it.''

The court then review and discuss some of the authorities cited by counsel for plaintiff in error, and say, page 208:

''These cases furnish but little aid in the construction of our own statutes, for it is obvious, as Mr. Bishop remarks, that the word 'building' in a statute will almost always depend for its meaning, in some degree, on the particular subject. and its connection with other words (Statutory Crimes, Section 292). And

while, as the assistant attorney-general suggests, it may be diffi-
cult to say at what time a structure in process of construction
presents such a degree or state of completion as that it may be
described as a building in the sense of the statute, still we think
the edifice in question may be properly denominated a building,
within the meaning of Section 4409.  In the connection in which
the word is used it can not import a finished structure ready for
use, as a residence, for the words are, 'any other building not
adjoining or occupied with a dwelling-house.'  The other build-
ing was a structure different from a dwelling-house, as those
words were used in this and the two preceding sections.  We
think the provision was intended to include any building not
within the curtilage, in which property might be stored, or men
or animals sheltered.  There are cases which show that the word
is often used in statutes in that case.  In *Rex* v. *Worall*, 7 Car. &
P., 516, an unfinished building, intended as a cart shed, which
was boarded up on all its sides, had a door with a lock to it, and
the frame of a roof, with loose gorse thrown upon it, but not
thatched, was held a building.  In *Queen* v. *Manning*, L. R., 1 Cr.
Cas., 338, an unfinished house of which the walls were built and
finished, and the roof on and finished, considerable part of the
flooring laid and the internal walls and ceilings prepared ready
for plastering, was held to be a building.  This shows that a
building, as the word is often used, does not necessarily imply
a completed structure.''

The house cited by the Wisconsin court was very much like
the house in question in this case as to its condition.  It seems to
us that it would be putting too strict a construction upon this
statute to hold that the structure, in the condition that this house
was, was not within the provisions against arson in this statute.
There being no case directly in point in this case, we are at
liberty to follow the rulings in other states or lay down such
a rule as seems to us proper, and we think that the reasoning of
the court in this Wisconsin case is sound.  Whether the structure
had reached that stage where it might be called a building or
not was a question of fact, and in this case it was left with the
jury to decide whether it was a building or not.  And it is com-
plained that the court erred in its charge to the jury in saying
that if the house was inclosed and the roof on it might be regarded
as a building and should be so held by them.  It is possible that
this definition of the court was a little too narrow.  That may

have been, but we would not reverse the judgment in this case if we were of the opinion that that was possibly a definition too narrow, and what the court said to the jury, it seems to us, should be read in the light of the undisputed evidence in the case, and we, therefore, hold that there was no error prejudicial to the defendant in what the court said to the jury.

A plea of former acquittal was filed by the defendant and demurrer was filed, and that demurrer was sustained, and this is claimed to have been erroneous. It appears that the defendant had been indicted at a former term of the court of common pleas of this county for arson, and in that indictment he was charged with burning a dwelling-house the property of one Martha Page, the same structure as this structure here covered by this indictment. The record shows that a verdict of "not guilty" was returned in that case, it is said upon the instructions of the court, and the defendant was discharged. It is said that the former acquittal is a bar to this prosecution. We are of the opinion that the ruling of the court was correct. A former acquittal is not a bar unless he was acquitted of the same offense with which he is charged here. He was charged in the former indictment with burning a dwelling-house, it never having been inhabited by human beings, and for that reason he was not guilty of that offense.

He is charged here not with burning a dwelling-house but with burning a building, designed thereafter to be used as a dwelling-house, which constitutes another and different offense. I will cite a few authorities: 3 Cyc., 987; 2 Am. & Eng. Enc. Law (2d Ed.), 928; *Commonwealth* v. *Hayden,* 150 Mass., 332; *People* v. *Handley,* 93 Mich., 46.

The court in the last case say in the syllabus:

"The acquittal of the charge of burning a dwelling-house is not a bar for a trial for the same offense providing for the punishment of one who shall willfully and maliciously burn any building other than a dwelling-house."

That case seems to determine the question here. I might add to what I have already said that if this indictment, upon which he was convicted, had simply described the structure as a build-

ing, and had not described it as an unfinished and incomplete building, that probably would have been sufficient to decide the question whether it had reached such a stage of construction that it could be called a building. A man can not be convicted of arson unless he burns one of the structures named in the statute or some kind of a building.

It is urged that the conviction of the defendant was against the weight of the evidence and that the court erred in its charge to the jury. The record shows that the defendant was charged with aiding and abetting Morrison in the crime, and he was convicted largely upon the testimony of Morrison. The record shows that this structure had been built at the village of West Unity, this county, and on the evening of October 8, about 9 or 10 o'clock, it was burned. The defendant was not arrested for some years afterward. Morrison was the principal offender, He was a witness in the case, and, according to his testimony, he suggested the burning of this house.

The defendant at that time was a young man about twenty years old. He and Morrison were and had been friends, quite intimate friends for quite a long time, and according to the testimony, Morrison, it seems, was not on friendly terms for some reason with Mrs. Page, the owner of this property, or her husband. He testified that on the evening that the fire occurred the defendant was at his place of business in West Unity, and that when they locked up this place he suggested to the defendant that it wou'd be a good night to burn this building, and the defendant agreed. He testified that after going to his own house, going in and getting a bottle of coal oil and a candle, they went to this house, going upstairs, setting the candle on the floor, and sprinkling coal oil on the floor and shavings, then both went to Morrison's house and went to bed. Soon after the house took fire, the alarm was given and the house practically consumed.

The defendant testified that he was at Morrison's place of business with Morrison and after leaving there Morrison went away for about half an hour, leaving him, the defendant, outside of Morrison's house; that he waited there until Morrison returned. He claimed that he had no knowledge of what Morrison was doing or what he intended to do, denies that he had ever talked

with Morrison about this matter, and say that he had nothing whatever to do with it.   Mrs. Morrison testifies that Morrison and the defendant came to their house about 10 o'clock that night, took off their shoes, and went upstairs to bed.   She says that she detected a strong odor of coal oil soon after they came into the house, and she spoke to them that night, and Morrison said that they had been in an alley where there were some barrels and perhaps they contained coal oil.   After they had both gone to bed, the alarm of fire was given and the defendant went to the fire; after the fire was over, they came back and he remained there that night and part of the next morning.   He testified that nothing was said about the fire between him and Morrison the next morning.

It went to the jury upon the testimony which I have just given and they found the defendant guilty.

The Supreme Court of this state has held that a man may be convicted upon the uncorroborated evidence of an accomplice. The court charged the jury, we think, correctly under this decision of the Supreme Court, that if the jury believe the testimony of an accomplice, although it was uncorroborated, it was their duty to convict.   That merely means to say to the jury, that if they believe the testimony of an accomplice, when he says and swears that the defendant took part with him in the commission of the crime, it is their duty to find him guilty.   It follows, of course, that it would be their duty to so find him, so we see no objection to the charge of the court.

There are states where it is provided by statute that a man shall not be convicted on the uncorroborated testimony of an accomplice.   That is not true of this state.   It was for the jury to say under the circumstances whether the testimony of Morrison was true.   He described in detail the commission of this crime.

It appears from the undisputed evidence in the case that Morrison and this young man were quite intimate friends—we think had often ridden about the country together in the daytime and I think sometimes in the evening, and that they were together a great deal.   There is a hint in the testimony that Morrison was visiting a young person in the neighborhood some three miles

away, a fact which he wished to conceal perhaps from his wife, and this young man would aid him in that he would wait around and then go into the house with Morrison, after he had returned from the visits, making it appear that he and Morrison had been away together.    I only speak of this as showing the intimacy which existed between them.    He was with Morrison the afternoon of the day the fire occurred.    He was with him in the evening at his place of business.    He went from there with him to his house.    He testifies that Morrison went into his house, as Morrison himself testifies, when he got the bottle of coal oil and the candle.    He says Morrison asked him to wait for him, but Morrison went away remaining about half an hour.    Where Morrison went after going away and leaving him there does not appear from the testimony of the defendant.

There is no denial of the testimony of Mrs. Morrison, who was a witness in the case, as to the shoes of Morrison, and she thinks of the defendants smelling of coal oil when they came in that night.

The fact that nothing was said between Morrison and the defendant about this fire the next morning at breakfast, as the defendant testifies, is a significant fact.    If the defendant was innocent of any connection with this crime, it is strange that he should sleep in the house that night, eat breakfast there and perhaps dinner, and nothing transpire between him and Morrison in regard to it.    It seems to us that, under this testimony, the court would not be warranted in finding that the verdict was not sustained by the evidence.

Arson is one of those crimes where there are usually but few, if any, eye-witnesses, committed usually in the darkness of night, and testimony which leads to conviction is usually circumstantial. While we have in this case these circumstances, we have also the testimony of Morrison, who swears positively to the defendant's connection with the commission of the crime.    Nothing appears in the record to show any feeling of hostility or enmity on the part of Morrison toward the defendant.    No reason appears why he should swear this young man into the penitentiary unless what he tells is true.    It is true that he had been indicted for this same offense, but he was also indicted and convicted for other

offenses, and was serving a term of imprisonment in the penitentiary at the time he testified in this case. It may have been, it is urged by counsel for plaintiff in error, that to testify in this case against the defendant would aid him to secure a pardon or relief in some manner. But the circumstances in this case stands out strongly that the defendant in this case, against whom he testified, was his friend, against whom he had no enmity and with whom he had been on the most intimate and friendly terms.

This whole question was submitted to the jury. They were better able than we are to hear the testimony and determine where the truth lay as between the defendant and Morrison, who gave his testimony against him. It is one of these cases that, under the law of the state, was submitted to the jury, and they have determined, after hearing the evidence, that the defendant is guilty as he stood charged in the indictment. We have reviewed the record with care, and find no errors in it to his prejudice. The judgment of the court of common pleas will therefore be affirmed.